UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

Civil Action No. 1:17-CV-00103-DAK-PMW

TAMMY SHELTON,
Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

---

### MOTION TO DISMISS PURSUANT TO Fed.R.Civ.P. 12(b)(1) and 12(b)(6)

---

### I.      MEET AND CONFER CERTIFICATION

This Court's local rules exempt Rule 12 motions from the meet and confer process due to the nature of relief requested.  However, Defendant did confer with Plaintiff's counsel prior to filing this Motion, advising counsel that the allegation in the Complaint did not violate the ADA and further advised counsel that Plaintiff lacked standing to proceed, asking Plaintiff to withdraw her Complaint. Mr. Ord has yet to respond, thus it is presumed that Plaintiff opposes this Motion to Dismiss and the relief requested herein.

### II.      INTRODUCTION

Between May 26, 2017 and July, 2017, Plaintiff Tammy Shelton, filed 22 "drive by" lawsuits in this Court against 22 different Utah businesses, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12181 et seq.  (The

Pacer Search printout for the 22 cases filed listing Ms. Shelton is attached as Exhibit A.) Plaintiff retained counsel to craft a generic complaint for use in all 22 cases, and the only minimal changes to each complaint pertain to the specific ADA violations against each defendant contained in paragraph 34, and the date when she visited each establishment.

The first complaint or notice of any alleged violation received by Chipotle was when it received notice that this lawsuit had been filed. None of the Complaints filed by Shelton assert that she notified the Utah Department of Human Services that any defendant failed or refused to fix any alleged violation, or that she even notified the defendants about the alleged violations prior to filing any of her 22 Complaints.

Plaintiff's Complaint fails to set forth claims that can survive a motion to dismiss. The Complaint does little more than recite the law and its history. It fails to establish which set of ADA or "PPA" Design Standards apply to this Defendant's restaurant, fails to allege any facts that would establish a violation of the ADA and fails to allege facts establishing that Plaintiff has standing to seek relief for any alleged violation. Furthermore, despite Plaintiff's stated goal of promptly correcting Defendant's discriminatory practices, Plaintiff failed to notify Defendant of the alleged ADA infraction prior to filing suit. Plaintiff's sprint to the courthouse violated the ADA's notice provision and goal of providing efficient and economical relief as well as her legal requirement to notify the Utah Department of Human Services prior to filing a complaint for relief.  42 U.S.C. § 2000a(3)(a) and (c); U.C.A. 1953 §62A-5b-103.  Accordingly, pursuant to Fed.

R. Civ. P. 12(b)(1) and (6), Defendant respectfully moves this Court to dismiss the Complaint.

Furthermore, based on the vexatious and malicious behavior of Plaintiff as argued below, this Court should preclude this Plaintiff from filing further lawsuits of this type against the Defendant without first obtaining Court approval.  Finally, this case merits assessing sanctions against Plaintiff for pursuing litigation against Defendant for a malicious and improper purpose in violation of 28 U.S.C. § 1927 or Fed. Rule Civ. P. Rule 11 and local rule DUCivR1-2, or at a minimum awarding Defendant its attorneys' fees as a prevailing party pursuant to 42 U.S.C. § 12205.

This case is one of the hundreds of ADA Title III cases filed across the Southwest by a Phoenix based entity that hires sham plaintiffs, pays local attorneys to turn over their ECF accounts to the Phoenix entity, Litigation Management and Financial Services, LLC ("LMFS") to manage these cases, and files virtually identical complaints, mandating that all communication be in writing and to an ADA email address used by employees of LMFS.  As the numerous exhibits attached to this Motion will confirm, once each defendant retains counsel, staff for LMFS, under the guise of the plaintiff's attorney paid by LMFS, then sends out identical emails to each defendant seeking a settlement for a nuisance value, in the Utah cases of $3,900, even though that number does not remotely relate to any recoverable legal fee.  Within Utah alone, this entity filed 262 complaints.  In the state of Colorado, this entity has filed over 150 complaints, in Nevada more than 270 complaints, nearly 100 complaints in New Mexico, and in

Arizona 1093 complaints were filed[1].    LMFS operates by seeking out disabled individuals to act as potential plaintiffs to whom they pay $50 for each filed case, and attorneys, to whom they pay a fee of $100 for each case, essentially for the use of the attorney's ECF password.    LMFS then handles all aspects of the litigation and settlement negotiations and retains all settlement proceeds.  (See attached Exhibit X.) In light of this sham litigation, Shelton is not the real plaintiff in interest and lacks standing to pursue this claim.

## BACKGROUND

1.      Chipotle owns a restaurant located at 135 North 500 West, Bountiful, Utah.  Plaintiff alleges that she visited the Chipotle restaurant referenced above on April 17, 2017 "to enjoy the goods and services offered" there. Complaint ¶¶ 12.   At the restaurant, Plaintiff was purportedly "denied full and equal access and full and equal enjoyment of the facilities, services, goods and amenities," *Id.* ¶ 11, as the result of the alleged barrier: (1) "failure to locate mirrors over lavatories and countertops with the bottom edge of the reflecting surface no greater than 40 inches (1015 mm) above the ground as required by 36 CFR § 1191 App. D Guideline 603.3." *Id.* ¶ 34 (a). According to Plaintiff, this barrier violates the 2010 ADA and its accompanying Disability Guidelines. *Id.*

---

[1] The Arizona cases were the first cases filed and were filed by Advocates for Individuals with Disabilities, "AID" as a named Plaintiff in addition to the disabled Plaintiff, David Ritzenthaler.  After an Arizona Judge dismissed all of these suits for lack of standing because none of them alleged a distinct and palpable injury, (see *Ritzenthaler v. MidFirst Bank*, Civil Action Number 2:16-cv-01969-NVW), AID changed its name to LMFS. (See list of cases attached as Exhibit N.)

2.     To remedy these alleged violations, Plaintiff seeks only "retrospective declaratory relief (that Defendant has violated and continues to violate Title III of the ADA) and prospective injunctive relief," as well as attorney's fees. *Id.* ¶ 38, 50. However, Plaintiff nowhere alleges that she or anyone acting on her behalf reported the alleged violation to Defendant before filing suit. Furthermore, Plaintiff does not state with specificity any allegations that a violation of the ADA has occurred, nor does Plaintiff assert facts to establish that she has sufficient standing to bring this action.

3.     The Complaint filed in this action is essentially identical to the remaining 21 complaints filed with this Court by Ms. Shelton since May, 2017.  The text of each complaint is virtually indistinguishable from the complaints filed in all other 21 complaints with the only differences appearing to be the name of the defendant and the modification of the non-compliant barriers in paragraph 34.   (A copy of another complaint listed in Exhibit A from the case of Shelton v. Hutchison-Hill, LC, d/b/a Great Clips, Civil Action Number 1:17-cv-00073-DN, is attached as Exhibit B.)

4.     Plaintiff's 22 complaints are also essentially identical to 120 complaints filed since May, 2017 by attorney Mike Studebaker, Esq. on behalf of purported Plaintiff Sam Burningham.   (The Pacer Search printout for the 120 Burningham cases is attached as Exhibit C.)   Other than the addition of paragraph 35, the Studebaker/Burningham complaints again only significantly differ by changing the defendant's identifying information and the list of specific non-compliant barriers in paragraph 34.   (A copy of a case from Exhibit C, *Burningham v. Toys "R" Us*, Civil Action 2:17-cv-00672-JNP-PNW is attached as Exhibit D.)

5.      Plaintiff's 22 complaints are also essentially identical to 107 complaints filed by attorney James Ord, Esq., the same attorney who represents Ms. Shelton in this matter, on behalf of purported Plaintiff Trevor Kelley.  (The Pacer Search printout for the 107 Kelley cases is attached as Exhibit E.)  Again, the only significant difference is the change in the defendant's address and the list of specific non-compliant barriers in paragraph 34.  (A copy of a case from Exhibit E, *Kelley v. Chipotle Mexican Grill, Inc.*, Case Number 2:17-CV-00689-DBP is attached as Exhibit F.)

6.      Plaintiff's complaint here is also nearly identical to the 43 complaints filed by attorney Jeffrey Emberton, Esq. on behalf of purported Plaintiff Terrell Frederick in Colorado.  (The Pacer Search printout for the 43 Frederick cases is attached as Exhibit G.) One of the 43 cases includes a complaint filed against Chipotle in Colorado, *Frederick v. Chipotle Mexican Grill, Inc.*, Civil Action Number 1:17-cv-00406-KLM, attached hereto as Exhibit H.   Additionally, 274 complaints were filed in Nevada by attorney Whitney Wilcher, Esq. on behalf of purported Plaintiff Kevin Zimmerman.  (The Pacer Search printout for the 274 Zimmerman cases is attached as Exhibit I.)  Four of those cases, Civil Action Numbers: 2:17-cv-00791-GMN-GWF, 2:17-cv-00399-RFB-VCF, 2:17–cv-01172-JAD-GWF, 2:17-cv-01270-GMN-GWF, were filed against Chipotle, attached hereto as Exhibits J-M.   Again, the only material differences in these complaints are the names of the purported plaintiffs, the identifying information of the defendant and the non-compliant barriers alleged.

7.      Mr. Ord, counsel for Ms. Shelton in this case, also represents Trevor Kelley as referenced above, and when that complaint was served on Chipotle, undersigned counsel attempted to directly contact Mr. Ord to discuss the case. Undersigned counsel received the email message attached hereto as Exhibit O from Robert Griffith instructing that all communication should be through email.    That message also a settlement demand. (See email from R. Griffith dated July 25, 2017, Exhibit O.) Multiple follow up emails were received from Ashley Iannacone from August 3, 2017 thru August 9, 2017, also claiming to be Mr. Ord's legal assistant in Utah.  (See email correspondence from A. Iannacone dated August 3, 2017 – August 9, 2017, Exhibit P.)    Presumably, Mr. Griffith and Ms. Ianacone continue to handle correspondence on behalf of Mr. Ord, as it has only been approximately 2 months since the above correspondence took place.

8.      Because the full identity of these entities is now known to Defendant, when Defendant was recently served in this case, undersigned counsel wrote to Mr. Ord asking him to withdraw his complaint not only due to a lack of proper standing, but because the allegation in the Complaint is without any merit.  (See Exhibit Q attached, correspondence from K. Mowry to J. Ord dated October 17, 2017.)  Mr. Ord has not responded to date.

9.      Attached as Exhibit R is an email from Ashely Iannacone, purportedly also a legal assistant to Mike Studebaker, Esq. counsel for Mr. Burningham.  This email is nearly identical to the email received from undersigned counsel in this case as

described in paragraph 7 above, and was filed with this Court on July 20, 2017 as Exhibit G to Defendant Toys "R" Us' Motion to Dismiss in *Burningham v. Toys "R" Us*, Civil Action 2:17-cv-00672-JNP-PNW.

10.     Attached as Exhibit S are two emails filed in the United States District Court of New Mexico, and filed with this Court as Exhibit I in Defendant Toys "R" Us' Motion to Dismiss, Civil Action 2:17-cv-00672-JNP-PNW, involving email responses received by counsel in matters before that Court in lawsuits also surreptitiously pursued by LMFS, authored again by Ashley Iannacone, the Legal Assistant for New Mexico attorney Sharon Pomeranz, Esq. and in all material aspects identical to the emails described in paragraph 7 above.  Of note, Ms. Pomeranz was the attorney of record for Plaintiff Alyssa Carton in the *Carton v. Carroll Ventures, Inc.* case in New Mexico, Civil Action 2:17-cv-00672-JNP-PNM (Magistrate opinion attached as Exhibit Y, filed with this Court as Exhibit L in Defendant Toys "R" Us' Motion to Dismiss, Civil Action 2:17-cv-00672-JNP-PNW.)

10.     Attached hereto as Exhibit T is an email received by Defense counsel in the Colorado case, *Frederick v. Chipotle*, *supra* also authored by Ashley Iannacone, purportedly a legal assistant to Colorado attorney Jeff Emberton, Esq. and in all material aspects identical to the emails described above in paragraphs 7, 9 and 10 above.

11.     Attached hereto as Exhibit U is an email response received by Defense counsel Christopher Moon in *Kelley v. Dollar Tree* and filed in that Utah action as Exhibit H in Defendant Toys "R" Us' Motion to Dismiss, Civil Action 2:17-cv-00672-JNP-

PNW, again authored by Ashley Iannacone.  It is in all material aspects identical to the email received by Defense counsel in this case as stated in paragraph 7 above.

12.     Attached hereto as Exhibit V is multiple email correspondence received from Defense counsel in the Zimmerman cases from Ashley Iannacone, paralegal to attorney Whitney Wilcher in Nevada, confirming that she also acts as a paralegal to Nevada attorney Wilcher. On May 11, 2017 the Honorable Karen B. Molzen, Chief Magistrate Judge of the United States District Court for the District of New Mexico held a hearing pertaining to the dozens of materially identical lawsuits filed in the District of New Mexico, spurred by the case *Carton v. Carroll Ventures, Inc.*, supra.  (See Exhibit W, transcript of May 11, 2017 hearing, filed with the Utah US District Court as Exhibit J in Defendant Toys "R" Us' Motion to Dismiss, Civil Action 2:17-cv-00672-JNP-PNW.)

13.     Following that hearing, on May 17, 2017 Magistrate Judge Molzen directed the publication of the agreements between LMFS, the purported plaintiff, and strawman counsel. (See Exhibit X, Order of Magistrate Molzen, LMFS Agreement and email of C. Broadbent, Esq. acknowledging awareness of New Mexico proceedings, filed with the Utah US District Court as Exhibit K in Defendant Toys "R" Us' Motion to Dismiss, Civil Action 2:17-cv-00672-JNP-PNW.)

14.     Subsequently on July 10, 2017 Magistrate Molzen recommended to the Chief Judge of the District of New Mexico that the cases in that District be dismissed with prejudice as they were malicious and filed for an improper purpose to use the

judicial process to harass Defendants into settlement.  (See Exhibit Y, *Carton v. Carroll Ventures, Inc.*, 2017 U.S. Dist. LEXIS 107135 (D.N.M. July 10, 2017.)

15.    On August 7, 2017, the Attorney General for the State of Nevada filed a Motion to Intervene in the 274 ADA Tile III cases filed by Kevin Zimmernan in Nevada (157 remain active) for the purpose of consideration of dismissal of all complaints filed by that plaintiff as well as whether the Court should assess sanctions or other remedial orders in that jurisdiction.[2]   (The Attorney General's Motion and supporting Exhibits is attached hereto as Exhibit Z.)

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. Rule Civ. P. 8(a)(2).   "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

---

[2] Defendant in this case incorporates by reference the arguments advanced by the Attorney General in Exhibit B attached to its Motion to Intervene and attached to this Motion as Exhibit Z, wherein the Attorney General argues that all complaints filed in Nevada failed to allege that the Plaintiff notified the Nevada Equal Rights Commission as required by 42 U.S.C. §2000a-3(a) and (c), and that the Complaints all failed to allege that the defendants refused to fix any alleged violations or that Plaintiff even notified the defendants of the alleged violations, as well as the argument that the Plaintiff failed to allege that he suffered any injury-in-fact, that the Complaints failed to make any meaningful distinction between the evolution of the PPA Design Standards over time and failed to allege which set of PPA Design Standards apply to the respective PPA that is the subject of each Complaint, and that Plaintiff failed to demonstrate the likelihood of imminent future harm to the Plaintiff.  Chipotle asserts these arguments are equally applicable to this case and warrant immediate dismissal of this pending action.

Rule 12(b)(6) requires a court to dismiss a complaint if, accepting the well-pleaded facts as true, a plaintiff fails to plead facts sufficient to support the relief sought. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The purpose of Rule 12(b)(6) is to "streamline litigation by dispensing with needless discovery and fact-finding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679 (citation omitted).

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). A 12(b)(1) motion to dismiss, on the other hand, requires a court to dismiss a complaint for "lack of subject matter jurisdiction. Courts must address jurisdictional issues at the beginning of every case and, if jurisdiction is lacking, dismiss the case immediately. *In re Franklin Sav. Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004). It is Plaintiff's burden to establish this Court's subject matter jurisdiction over her claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Moreover, when analyzing a 12(b)(1) motion to dismiss, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Although a court assumes all well-pleaded factual allegations are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Peterson v. Martinez,* 707 F.3d 1197, 1206 (10th Cir. 2013) (internal quotation and citation omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a

claim upon which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (internal quotations omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

Here, as discussed below, Plaintiff has failed to allege facts sufficient to establish any violation of the ADA, and has failed to allege facts sufficient to establish she has standing to seek relief for any alleged violation.

## V.      ARGUMENT

### A.      The Complaint Should be Dismissed Because Plaintiff Lacks Standing.

In ADA Title III cases, a plaintiff must establish standing to pursue the claim by pleading facts supporting three elements: "[1] a plaintiff must suffer an 'injury in fact' that is actual or imminent; [2] the injury must be fairly traceable to the challenged action of the defendant; and [3] it must be likely that the injury will be redressed by the relief requested." *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F. 3d 1205, 1210-11 (10th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Chapman v. Pier 1Imports (U.S.) Inc.*, 631 F. 3d 939, 946 (9th Cir. 2011).

"Title III of [the ADA] . . . provides for only injunctive relief and not compensatory damages." *Rhodes v. Southern Nazarene Univ.*, 554 Fed. Appx. 685, 690 (10th Cir. 2014) (citing 42 U.S.C. § 12188(a)(1); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004)). As a result, the third element of the standing analysis has often been restated as requiring a showing that "plaintiff [is] suffering a continuing injury or [is]

under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citation omitted); *see also Chapman*, 631 F.3d at 946 ("to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, he must demonstrate a 'real and immediate threat of repeated injury' in the future") (citation omitted).

Standing is a jurisdictional matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Failure to establish any one of the three standing requirements deprives a court of jurisdiction to hear the suit. *Id.* Here, as discussed below, Plaintiff has not alleged facts to support any of the elements of standing. Accordingly, this Court lacks jurisdiction and the Complaint must be dismissed pursuant to Fed. Rule Civ. P. 12(b)(1).

### 1. Plaintiff Has Not Alleged An "Injury in Fact" Traceable to Non-Compliant Conditions.

Plaintiff's Complaint plainly does not satisfy the first two elements of the standing analysis. An ADA plaintiff may establish injury-in-fact traceable to the challenged conduct of the defendant by pleading facts sufficient to establish that "a barrier violating [ADA standards] ***relates to a plaintiff's disability***," thus impairing the plaintiff's full and equal access to the facility. *Chapman*, 631 F. 3d at 947 (emphasis added). A plaintiff fails to satisfy this pleading requirement where "he never alleges what those barriers were and how his disability was affected by them so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement." *Id.* at 954.

Here, as noted above, Plaintiff vaguely alleges that Defendant's restaurant at issue contains one physical condition concerning the height of an unspecified mirror that

is allegedly non-compliant with ADA standards. But Plaintiff has completely failed to identify the nature of any alleged disability and has completely failed to articulate how the alleged non-compliant conditions related to her alleged disability and impaired her full and equal access. Although the Complaint alleges that Plaintiff uses a "wheelchair" (Complaint ¶ 2), the Complaint does not identify how use of the wheelchair was impaired by the condition of unspecified mirror height.[3] As a result, there is no standing. *See Chapman*, 631 F.3d at 954-55.

### 2.      There is No Threat of Future Injury.

To establish the third element of standing in an ADA case, a plaintiff may plead that the plaintiff has definite plans to return to the facility in the future, but is deterred from doing so because of specified architectural barriers. *Tandy*, 380 F.3d at 1284. Speculative, someday intentions do not support standing to seek prospective relied in the context of a Title III lawsuit. *Id.,* citing *Defenders of Wildlife,* 504 U.S. 555, 564 (1992).  Plaintiff's Complaint contains only her conclusory assertion that she "will avail herself of the goods and services offered at the PPA in the future." (Complaint, ¶ 13.) However, this statement is nothing more than a legal conclusion masquerading as a factual allegation and is insufficient to establish standing.

Furthermore, Plaintiff's naked assertion that she plans to return to the property at issue is belied by the sham nature of this litigation.  Indeed, the real party in interest in this lawsuit in not Ms. Shelton, she is little more than a "pawn" paid a fee of $50 to ride

---

[3] Defendant asserts that Plaintiff's alleged ADA violation is baseless, as the height of all mirrors at this location are compliant with the applicable PPD design standards.

along and be photographed in possible targets for a scam to extort attorneys' fees from unsuspecting businesses.[4]   The real party in interest here is LMFS, which has filed hundreds of sham lawsuits in the Southwestern United States including Arizona, New Mexico, Nevada, Colorado and now Utah for the sole purpose of bilking attorneys' fees from businesses using paper plaintiffs and complicit "strawman" attorneys who authorize LMFS to use their ECF passwords to file documents.  In essence, LMFS has attempted to manufacture standing in this case, as in so many others, and as such has no standing to bring this action in the first place.

Indeed, Magistrate Molzen stated in her Order of July 10, 2017 that:

"I recommend that the Court dismiss these cases with prejudice as malicious because they were primarily filed for an improper purpose.  It appears that Attorney Pomeranz and LMFS are using the judicial process to harass Defendants into settlement to obtain financial gain for Attorney Pomeranz and LMFS and not to remedy ADA violation that serve as barriers to individuals with disabilities in accessing goods and services."  *Carton v. Carroll Ventures. Inc.,* 2017 U.S. Dist. LEXIS 107135 *12 (D.C.N.M. July 10, 2017), See attached Exhibit Y.

---

[4] Defendant incorporates by reference the argument advanced in the Motion to Dismiss for Lack of  Standing filed by Toys "R" Us in *Burningham v. Toys "R" Us,* Civil Action 2:17-cv-00672-JNP, wherein Plaintiff Burningham filed 134 ADA lawsuits in Utah, again pursued by the real Plaintiff-In-Interest, LMFS.  (Said Motion is attached as Exhibit AA.) Toys "R" Us argues with explicit detail and supporting documents the procedure for LMFS placing ads in internet sources such as Craigslist or Indeed.com to look for potential plaintiffs and attorneys, entering into agreements with said persons, and driving plaintiffs around from location to location looking for ADA violations. LMFS agrees further to purchase and maintain a telephone number and email address of the attorney to communicate and settle each ADA action with the defendants, with all contact with defendant counsel through the assigned paralegal or other staff member of LMFS who will then commence negotiations.  It was this behavior that warranted the Magistrate Judge recommending dismissal of these claims in New Mexico, based on the attorney and LMFS filing said lawsuit for the purpose of financial gain rather than to remedy any ADA violations. (See attached Exhibit X, LMFS Agreement, and Exhibit Y, *Carton v. Carroll Ventures, Inc.,* 2017 U.S. Dist. LEXIS 107135 (D.N.M. July 10, 2017)).

The cases filed in Utah are no different, having been filed once again to harass defendants into settlements to obtain financial gain, in this case, for Attorney Ord and LMFS and not to remedy any purported ADA violation, thus dismissal is appropriate.

### 3.      There is No Tester Standing.

Plaintiff also seeks to establish "tester standing." (Complaint, ¶ 14). With respect to "tester standing," Defendant acknowledges that the Tenth Circuit has held that a tester may have standing under ADA Title III. "However, the fact that 'tester standing' exists under Title III does not displace the general requirements of standing. . . . Like any plaintiff, a tester must demonstrate that she has indeed suffered a cognizable injury in fact that will be redressed by the relief sought." *Abercrombie & Fitch*, 765 F.3d at 1211. Here, Plaintiff does not allege what her disability is, but moreover fails to assert how she has suffered a cognizable injury in fact caused by the alleged non-compliant barrier related to her disability. Accordingly, Plaintiff does not have tester standing.

**B.    The Court Should Dismiss the Complaint Because it Contains No Factual Allegations Establishing a Violation of the ADA.**

The vast majority of Plaintiff's Complaint is devoted to a recitation of the history of the ADA and its requirements. Title III of the ADA (42 U.S.C. § 12181, *et seq.*) generally requires places of public accommodation, including restaurants, to provide facilities that are "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1). Consequently, a threshold question in an ADA case is whether the plaintiff is an individual with a "disability."

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities; a record of such an impairment; or being

regarded as having such an impairment. 42 U.S.C. § 12102(1). But a plaintiff is not entitled to the protections of the ADA merely because she labels herself as having some unspecified "disability." *Iqbal*, 556 U.S. at 678 (a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do") (citation omitted).

Here, Plaintiff alleges she requires the use of a wheelchair, however does not state with specificity what her disability is or how her disability substantially impairs a major life activity.  Complaint, ¶ 2, 10. Such recitation of the "disability" label, without supporting factual averments, fails to state a claim for which relief may be granted. *See Moore v. Equity Residential Mgmt., L.L.C.*, Case No. 16-CV-07204-MEJ, 2017 WL 897391, *2 (N.D. Cal. Mar. 7, 2017) (allegation that plaintiffs "are disabled in an unspecified manner" failed to allege sufficient facts to withstand a Rule 12(b)(6) motion); *Twitchell v. Hutton*, Case No. 10-CV-01939-WYD-KMT, 2011 WL 318827, *10 (D. Colo. Jan. 28, 2011) (complaint subject to dismissal where plaintiff failed to allege facts suggesting her impairment substantially limited any of her major life activities).

Even if Plaintiff had alleged sufficient facts to establish the existence of a disability, the Complaint still fails to state a claim for which relief may be granted because Plaintiff has not alleged facts establishing that any conditions at Defendant's restaurant violate the ADA. The ADA requires public accommodations to comply with certain Standards for Accessible Design. 28 C.F.R. § 36.406(a) (adopting 1991 Standards for Accessible Design for new construction before September 15, 2010). But

to state a claim on which relief may be granted, the Complaint must do more than just recite these legal standards.

Plaintiff contends that Defendant's restaurant fails to comply with the ADA in the following respect:

a. "failure to locate mirrors over lavatories and countertops with the bottom edge of the reflecting surface no greater than 40 inches (1015 mm) above the ground as required by 36 CFR § 1191 App. D Guideline 603.3." (Complaint, ¶ 38(a)).

In support of this alleged violation, Plaintiff extracts language from the Standards for Accessible Design, but that is all Plaintiff has done. These are merely "formulaic recitation of the elements of a cause of action [which] will not do." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules, Defendant (and the Court) cannot be left to speculate about what unidentified "mirror" is non-compliant or what the non-compliance is based on. The Federal Rules require factual allegations, not merely a recitation of the legal standards. Because the Complaint fails to do so, it should be dismissed for failure to state a claim.

**C.     Plaintiff's Twenty Two Complaints, Including the Complaint Filed Against Chipotle Herein, Are an Abuse of the Judicial System and Were Maliciously Filed for Improper Purposes, Warranting Sanctions Against Plaintiff and/or Plaintiff's Counsel.**

This case cries out for the imposition of sanctions under 28 U.S.C. § 1927 or per Rule 11 to deter conduct by this entity that has impacted hundreds of businesses across the Southwest United States, including Arizona, New Mexico, Nevada, Colorado and now Utah.  Chipotle has been sued by this entity no less than 7 times, and the District of

New Mexico has addressed the malicious nature of these scam lawsuits designed to harass defendants into paying settlements rather than addressing ADA violations. *Carton v. Carroll Ventures, Inc., supra.* The Attorney General has moved to intervene in these lawsuits filed in Nevada in part to determine the sanctionable conduct of LMFS and its strawman counsel. (See *Motion to Intervene,* Exhibit Z.) The Tenth Circuit has made it clear that "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable under Section 1927. *Hamilton v. Boise Cascade Express,* 519 F.3d 1197, 1202 (10th Cir. 2008), citing *Bradley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc). The Court also has the inherent power to issue sanctions for bad-faith conduct that is an abuse of the judicial process. *Farmers v. Banco Popular of N. Am.,* 791 F.3d 1246, 1256 (10th Cir. 1025.)

In the instant case, Mr. Ord was made aware of these issues with a similar motion to dismiss filed in *Kelley v. Chipotle*, *supra*. As such, there is absolutely no dispute that Mr. Ord is well aware of the court rulings in other jurisdictions as to the nature of this type of litigation and business model advanced by LMFS. Furthermore, after Defendant was served on October 11, 2017, undersigned counsel specifically advised Mr. Ord that not only did his client lack standing, but the allegation in his complaint was entirely baseless as the mirror height of all mirrors in the restaurant is, in fact, compliant with the applicable ADA PPA design standards. Mr. Ord never responded.

Defendant has been subjected to similar litigation in both Colorado and Nevada at the hands of LMFS.  In Colorado, Plaintiff Frederick in Colorado Springs filed 43 similar lawsuits with language identical to the complaints filed in this Court, for the purpose of obtaining a quick settlement from each defendant (see *Frederick v. Chipotle, supra*),[5] and in New Mexico a similar boiler-plate complaint was filed by Plaintiff Zimmerman against 274 defendants including 4 complaints filed against Chipotle, again for the purpose of obtaining a quick settlement from each defendant.  (See *Zimmerman v. Chipotle, supra*.) In each case, undersigned counsel was directed to communicate only via email with a legal assistant or paralegal purporting to work in the same office as plaintiff's counsel, and in each case an immediate settlement demand was made by the legal assistant or paralegal, in every case with legal assistant, Ashley Iannacone, Mr. Emberton's legal assistant in Colorado - the same legal assistant who apparently also works for Mr. Ord and Mr. Studebaker in Utah, Mr. Wilcher in Nevada and Ms. Pomeranz, in New Mexico.

Defendant is now in the position of once again defending nearly identical claims against LMFS, under the guise of Ms. Shelton.  There is no question that Mr. Ord was aware of the New Mexico Order wherein Magistrate Molzen recommended defendants in New Mexico brief the appropriateness of sanctions for behavior that took place in that District that amounted to bringing malicious claims, as he was provided a copy of that order prior to serving the Defendant in this case.

---

[5] Two other plaintiffs filed nearly identical ADA complaints in Colorado, purported Plaintiff Mellisa Umphenour and her attorney James Carr, Esq. filed 72 cases in Colorado, and purported Plaintiff Vicki Mize and her attorney Lori Coulter, Esq. filed 15 Colorado cases, and purported Plaintiff Kristin McIntosh filed more than 20 Colorado cases with her Florida based attorney, Ben Zion Bradley Weitz, Esq.

This abuse of the judicial system by the real Plaintiff-In-Interest in this case – LMFS - and its strawman attorney has caused defendants to suffer damages for which this Court should award appropriate sanctions to stop this behavior.   *See Carlock v. Collins Motor Company,* Case No. 04-cv-0370 J (RBB). (S.D. Cal. Apr. 7, 2008) (awarding fees for serial ADA filings where plaintiff and his attorney actively engaged in the lucrative "cottage industry" of filing ADA claims to harass businesses into quickly entering into cash settlements).

Furthermore, Fed. R. Civ. P. Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose. *Harrison v. Luse*, supra; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).   Fed. R. Civ. P.  Rule 11, as amended in 1983, provides in pertinent part: "[T]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."   The Rule further states that the attorney certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(a) and (b).  If a pleading,

motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties, the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. *Id.,* at 11(c)(1).

Attorneys have an affirmative duty to make a reasonable inquiry into both the facts and the law relevant to their pleadings and motions prior to signature. *Terrestrial Systems, Inc. v. Fenstemaker*, 132 F.R.D. 71, 75 (D. Colo. 1990); *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1091 (3rd Cir.1988). Challenged conduct is evaluated under a standard of objective reasonableness, that is, whether a reasonable attorney admitted to practice before the District Court would file such a document. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir.1988). The attorney must "stop, look and listen" before signing a document subject to Rule 11. *See Id*, (Quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir.1987)). Because Plaintiff and her attorney violated Rule 11, specifically in failing to assert proper standing as well as assert a single fact that supports any ADA violations against Chipotle, and has clearly filed this suit, along with 21 others, for what appears to be the sole purpose of obtaining attorney's fees from the various defendants, Defendant respectfully requests that sanctions be assessed to deter this conduct.

**A.**     **This Court Should Declare Plaintiff a Vexatious Litigant and Require Her to Obtain Court Approval Before Filing Further Lawsuits Against Defendant.**

Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances. *YSAIS v. Richardson,* 603 F.3d 1175 (10th Cir. 2010); *Andrews v. Heaton,* 483 F.3d 1070 (10th Cir. 2007); *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir.1989).  Injunctions restricting further filing are appropriate where (1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and (3) the litigant receives notice and an opportunity to oppose the court's order before it is implemented. *Johnson v. Stock*, 2005 WL 1349963 (10th Cir. June 8, 2005) (Filing restrictions imposed upon a plaintiff who filed multiple vexatious, frivolous pleadings in District of Utah action.)  Based on the Plaintiff's – moreover the real Plaintiff-In-Interest here, LMFS's  -  history of harassing and duplicative litigation, motive in pursuing litigation, the undisputed fact that this repeated litigation has cost the Defendants to incur unnecessary expense and placed a needless burden on this and many other courts, and the appropriateness of sanctions to deter this conduct, Defendant submits that this Court should declare Plaintiff a vexatious litigant and preclude it from filing any further lawsuits against Defendant unless first advising Defendant of any alleged barriers and providing it a reasonable time to correct any alleged ADA violations.  See *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007) and *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir. 1986) (outlining a 5 factor test to determine whether a plaintiff is a vexatious litigant.)

In this case, there is no question that Plaintiff Shelton has an extensive history of litigation, being a plaintiff in at least 22 cases filed within a 5 week period by the same

attorney in the same district.[6] Moreover, as previously discussed and perhaps even more troubling is the undisputed fact that the real Plaintiff-In-Interest here – LMFS – has filed literally thousands of complaints in the Southwestern United States including Arizona, New Mexico, Nevada, Colorado and now Utah, using paper plaintiffs and complacent attorneys to advance their "business model" of bilking unsuspecting businesses out of thousands of dollars in attorney's fees.   The verbiage in each complaint in every state is virtually identical, describing each business generally as a place of public accommodation (PPA), failing to state which PPA Design Standard is applicable to each case, and stating generally that the purported plaintiff visited the 'PPA' to enjoy the goods and services offered at the 'PPA'.   The Court in *Molski* noted that the complaints were all textually and factually similar and that a large volume of suits might indicate an intent to harass defendants into agreeing to cash settlements. While again not entirely dispositive, the district court surmised that boiler plate complaints might indicate an intent to harass defendants. *Id.* at 1051.

        The Court in New Mexico has reached that conclusion, finding that the complaints filed in that state were, in fact, filed for an improper purpose and to harass the defendants into settlement to obtain financial gain for Attorney Pomeranz and LMFS and not to remedy any ADA violation.   The Nevada Attorney General's Office has moved to intervene in the cases pending in that jurisdiction, for the same reason - that

---

[6] Plaintiff's 22 complaints were initially filed by Attorney Jonathon Feld, Esq. from May 9, 2017 thru June 13, 2017. Defendant Chipotle was not served until October 11, 2017 by Mr. Ord, who contemporaneously substituted as counsel for Mr. Feld.

the cases appear to be filed for malicious reasons rather than to cure any ADA violations.

It's worth noting that Magistrate Molzen stated on the record prior to issuing her Order in the *Carton* case:

The Court: "`I am familiar with this case out of the District of Nevada, that's Exhibit Q, in which Litigation Management and Financial Services, LLC, which I assume is the same entity that we're discussing today, indicates it had a direct pecuniary interest in the outcome of this case, and it moved to withdraw IFP status because the Court was entitled to have that information…" (See page 68, Lines 8-14 of the transcript dated May 11, 2017 attached hereto as Exhibit W.)

The attached emails from Ashley Iannacone, the named paralegal for all claims filed by Plaintiff Carton in New Mexico; Plaintiff Zimmerman in Nevada; Plaintiff Frederick in Colorado; and Plaintiffs Kelley, Burningham and Shelton in Utah demonstrate the undisputable link between these cases and the undeniable fact that Ms. Iannacone's employer, LMFS, is the real party in interest and responsible for this duplicative, harassing and vexatious litigation.

There is no doubt that LMFS has caused unnecessary expense to the parties and placed a needless burden on the courts. LMFS, through its paper plaintiffs and strawman counsel has filed suit against Defendant no less than 7 times, each time the filing of the lawsuit as the first notice of any alleged ADA violation.  And that represents only the cases filed against this Defendant.  There are literally hundreds of named defendants not only in three locations in Utah, but in multiple locations in Arizona,

Nevada, New Mexico, and Colorado who have been victimized by this business entity. More than 2000 complaints have been filed, clogging multiple court dockets around the Southwestern United States with complaints that have little or no merit. Attorneys for the combined parties have already generated untold tens of thousands of dollars defending these ADA claims, and it is unknown how many parties have opted to pay settlements for phony claims in the hope that this entity stops filing lawsuits against them.  However, it is clear from the sheer number of filings, and the near identical nature of the complaints that the instant litigation is little more than a shakedown meant to extort money from businesses in the form of settlements rather than cure any ADA violations.

Finally, no other sanctions will adequately protect the parties and the Court. Without a prohibition on the manner in which this entity can sue defendants for alleged ADA violations under Title III, this entity will continue to abuse the judicial system, file vexatious and often times falsely premised lawsuits, and harass defendants with the sole goal of extorting money under the guise of attorneys' fees and settlements.  The 9th Circuit, in *Molski v. Mandarin Touch Restaurant*, 347 F.Supp.2d 860, 863 (C.D.CA. 2004) expressed its displeasure with this type of ADA litigation as follows:

> The ability to profit from ADA litigation has given birth to what one Court described as "a cottage industry." *Rodriguez v. Investco, LLC.* 305 F.Supp.2d 1278, 1280-81 (M.D.Fla.2004). The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA. Then, rather than simply informing a business of the violations and attempting to remedy the matter through "conciliation and voluntary compliance," *Id.* at 1281, a lawsuit is filed, requesting damage awards that would put many of the targeted establishments out of business. Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter.

The result of this scheme is that "the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." *Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1375 (M.D.Fla.2004). Serial plaintiffs, like Molski, serve as "professional pawn[s] in an ongoing scheme to bilk attorney's fees." *Rodriguez*, 305 F.Supp.2d at 1285. It is a type of "shotgun litigation [that] undermines both the spirit and purpose of the ADA. *Brother*, 331 F.Supp.2d at 1375." *Molski v. Mandarin Touch Restaurant*, *supra*.

Here, however, the matter is even more troubling as the abuse occurs not just at the hands of an unscrupulous attorney, but based on a business model of a business entity that is not even a resident of Utah.  This behavior is inappropriate, malicious, constitutes harassment and must be stopped. This Court is fully capable of providing guidelines as to what LMFS may do to obtain its permission to file an action against the Defendant in the District of Utah moving forward, including providing notice of any alleged violation to the Defendant and giving it an opportunity to cure any alleged violation prior to initiating suit.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that its Motion to Dismiss be granted, that Plaintiff's Complaint be dismissed with prejudice, that Plaintiff be precluded from filing further lawsuits against Defendant without providing appropriate notice as determined by the Court to allow the Defendant to cure any alleged ADA barriers prior to initiating suit, and that Plaintiff be assessed Defendant's costs and fees in defending this action either as the prevailing party or as sanctions under 28 U.S.C. § 1927 or for a violation of Rule 11 at the Court's discretion.

Dated this 3rd day of November, 2017.

*/s/ Kathleen J. Mowry*
MESSNER REEVES LLP
Kathleen J. Mowry (Admitted Pro Hac Vice)
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Tel: (303) 623-1800
Fax: (303) 623-0552
Email: kmowry@messner.com

AMES & AMES, LLP
Byron L. Ames, #11498
Cortney H. Remund, #14297
210 N. Main Street
Kamas, UT 84036
Tel: (435) 214-0303
Fax: (435) 216-9393
Email: Bames@Amesfirm.com
       Cremund@amesfirm.com

*Attorneys for Defendant*
*Chipotle Mexican Grill, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2017, a true and correct copy of the foregoing **MOTION TO DISMISS PURSUANT TO Fed.R.Civ.P. 12(b)(1) and 12(b)(6)** was filed and served upon the following by the method indicated:

James K. Ord , III             ☐ via U.S. Mail
THE ORD FIRM PC           ☐ via Hand Delivery
PO BOX 16266                ☐ via Facsimile
SALT LAKE CITY, UT 84116     ☐ via Overnight Delivery
(801) 997-0442              ☒ via CM/ECF
james.ord@theordfirm.com
sydney@utahadalaw.com

*Paper courtesy copy delivered to:*
Senior Judge Dale A. Kimball    ☐ via U.S. Mail
UNITED STATES DISTRICT COURT   ☐ via Hand Delivery
DISTRICT OF UTAH           ☐ via Facsimile
351 S. West Temple, Room 10.400   ☒ via Overnight Delivery
Salt Lake City, Utah 84101       ☐ via CM/ECF

*Kelly A. McIlree*
_____
Kelly A. McIlree